IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **USA FINANCIAL SERVICES, INC.,** )<br>**BANKERS FINANCIAL SERVICES,** )<br>**INC., and MARK R. CAMPISI,** )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**STATE FARM FIRE AND** )<br>**CASUALTY COMPANY,** )<br>)<br>Defendant. ) | 2:04cv1619<br>Electronic Filing |

## OPINION

Plaintiffs commenced this action seeking a declaration that defendant had a duty to defend and indemnify them in conjunction with a number of underlying lawsuits arising out of the placement of secondary mortgages for home improvement services. Presently before the court are cross motions for summary judgment. For the reasons set forth below, plaintiffs' motion will be denied and defendant's motion will be granted.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to

1

support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

Plaintiffs' complaint seeks to establish coverage under business insurance policies which contain basic comprehensive general liability ("CGL") coverage. Plaintiffs assert this coverage entitled them to a defense in the underlying lawsuits and further assert defendant breached its obligations under the policies by failing to provide a defense after timely notice

was given. They contend that as a result defendant is now also responsible for the amounts paid out in settlement, as well as attorneys fees and costs and other attendant damages under Pennsylvania's bad faith insurance practices statute. Defendant contends the policies do not provide coverage for any of the claims in the underlying lawsuits.

Both parties acknowledge in their respective briefs and accompanying appendices that this court dealt with identical claims by the same plaintiffs regarding essentially the same underlying lawsuits under an almost identical CGL insurance policy in <u>Westfield Group v. Mark R. Campisi, individually and d/b/a Banker's Financial Serices, Inc., and Atlantic Credit, Inc.</u>, 2:02cv997. There, in a thorough opinion issued at summary judgment, the court examined the standard grants of coverage provided by a CGL policy, parsed through the allegations in various lawsuits and concluded that the carrier had no duty to defend plaintiffs in the underlying lawsuits brought by the Pennsylvania Attorney General and Neptune Issue, Inc., but did have a duty to defend with regard the lawsuits filed by the individual homeowners. The parties in the instant action reference and seek to rely on the aspects of that opinion with which they agree and challenge those with which they disagree. Neither party challenges in any meaningful way the summary of the allegations in underlying lawsuits or the general principles of law set forth in the opinion that govern the determination of whether a carrier has a duty to defend a particular lawsuit under Pennsylvania law.[1] Nor have plaintiffs advanced any

---

1. For the convenience of the reader some of the more important principles are set forth herein. The duty to defend is separate and distinct from the duty to indemnify under Pennsylvania law. <u>Erie Ins. Exchange v. Transamerica Ins. Co.</u>, 533 A.2d 1363, 1368 (Pa. 1987) ("the duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage."). An insurer's obligation to defend is fixed solely by the allegations in the underlying complaint(s). <u>Etna Casualty and Surety Co., v. Roe</u>, 650 A.2d 94, 98 (Pa. Super. 1994); <u>Stidham v. Millvale Sportsman's Club</u>, 618 A.2d 945, 953-54 (Pa. Super. 1993). An insurer has a duty to defend whenever the allegations in a complaint against its insured, when taken as true and construed in favor of the insured, set forth a claim which potentially falls within the coverage provided by the policy. <u>Lucker Mfg. Inc., v. The Home Ins. Co.</u>, 23 F.3d 808, 821 (3d Cir. 1994);

3

Cadwallader v. New Amsterdam Casualty Co., 152 A.2d 484, 488 (Pa. 1959). The duty to defend is triggered even if the allegations against the insured are groundless, false or fraudulent. D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986). The duty likewise exists where the potential for a covered claim exists and the determination of coverage depends upon the existence or non-existence of undetermined or disputed facts raised against the insured. Germantown Ins. Co., v. Martin, 595 A.2d 1172, 1174 (Pa. Super. 1991). Where a complaint raises a claim potentially within the scope of coverage, the duty to defend remains with the insurer until the claim is narrowed to one patently outside the policy coverage. Germantown Ins. Co., 595 A.2d at 1174 ("as long as the complaint comprehends an injury which may be within the scope of the policy, Germantown must defend Martin's estate until the claim is confined to a recovery the policy does not cover.") (citing United Services Automobile Assoc. v. Elitzky, 519 A.2d 982 (Pa. Super. 1986), alloc. denied, 528 A.2d 957 (Pa. 1987)); Stidham, 618 A.2d at 953-54.

It is not the actual details of the injury, but the nature of the complaint which determines whether the insurer is required to defend." Etna Casualty and Surety Co., 650 A.2d at 98 (quoting D'Auria, 507 A.2d at 859). The particular causes of action in the complaint also are "not determinative of whether coverage has been triggered.... Instead, it is necessary to look at the factual allegations contained in the complaint." Mutual Benefit Ins. C. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

Moreover, the potential scope of coverage under an insurance policy must be examined before it can be determined whether a complaint is potentially covered by the policy. Lucker Manufacturing, Inc., 23 F.3d at 813. The inquiry into coverage is antecedent to ascertaining whether the duty to defend exists. Id. (citing Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987).

"Traditional principles of insurance policy interpretation control the inquiry into coverage." Lucker Manufacturing, Inc., 23 F.3d at 814. The instrument must be interpreted in light of the parties' reasonable expectations. Standard Venetian Blind Co., v. American Empire Ins., 469 A.2d 563 (Pa. 1983). If the language of an insurance policy is clear and unambiguous, it must be given its ordinary meaning. Imperial Cas. & Indm. Co., v. High Concrete Structures, Inc., 858 F.2d 128, 131 (3d Cir. 1988). If a provision of the policy is ambiguous, the ambiguity is to be construed to afford coverage. Lucker Manufacturing, Inc., 23 F.3d at 814. A provision is ambiguous if after considering it in the context of the entire policy reasonable minds could differ as to its meaning. Imperial Casualty and Indemnity Co., 858 F.2d at 131. However, strange or contrived readings of policy language are not to be undertaken to create an ambiguity where none exists, nor should a court attempt to rewrite policy language in a manner that conflicts with the plain meaning of the words employed. Lucker Manufacturing,

persuasive reason to revisit or question the rulings leading to a determination that they are not entitled to coverage for the underlying lawsuits brought by the Pennsylvania Attorney General and Neptune Issue, Inc. Accordingly, the court will render the same rulings in this action and the February 10, 2006, opinion in <u>Westfield</u> (Docket No. 32) is incorporated herein in support of those rulings.

In <u>Westfield</u>, a determination was made that the lawsuits by the individual homeowners did "comprehend" an injury within the scope of the coverage provided by the CGL policy at issue. The injury was based on the potential or actual "loss of use" of the homeowners' residences as a result of the course of events giving rise to complaints. Consequently, Westfield had a duty to defend plaintiffs in those lawsuits.

The central dispute in this action is whether State Farm's CGL policies provide potential coverage for these same lawsuits by the homeowners and trigger(ed) State Farm's duty to defend. State Farm asserts its policies provide different coverage with regard to loss of use and the homeowners' lawsuits do not comprehend an injury within the scope of that coverage. Plaintiffs contend the homeowners claims fall within the loss of use coverage provided by State Farm's policies.

The claims advanced by the Homeowners do not comprehend an injury within the scope of State Farm's policies. Under State Farm's policies "property damage" means:

> a. Physical injury to or destruction of tangible property, including all resulting loss of use of that property. All such loss of use will be considered to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use will be considered to occur at the time of the occurrence that caused it.

State Farm policies at 33 (Exhibit 7 to Doc. No. 46, State Farm's Appendix in Support of Statement of Material Facts).

---

Inc., 23 F.3d at 814; <u>Elitzky</u>, 517 A.2d at 986.

5

Both part "a" and part "b" of the definition require "physical injury" to tangible property to occur before covered property damage arises. In other words, State Farm's policies only cover "loss of use" where it is caused by "physical injury" to tangible property. And courts consistently have upheld policy language requiring a causal nexus between "physical injury" to tangible property and a claimed loss of use when the language identifying such a limitation is clear and unambiguous. See Continental Ins. Co. v. Bones, 596 N.W.2d 552, 556 (Iowa 1999) (policy language requiring loss of use to result from physical damage or destruction of tangible property to constitute "property damage" and trigger coverage is enforceable where it is clear and unambiguous) (collecting cases in support); see also Ehlers v. Johnson, 476 N.W.2d 291 (Wis. Ct. App. 1991) (policy language requiring loss of use to be due to a physical injury to the property in order to constitute "property damage" held enforceable).

The qualifying term "tangible" generally is understood to denote property that is physical and capable of being touched and perceived. See Lucker Manufacturing, Inc., 23 F.3d at 818-19; U.P.S. Fidelity & Guar. Co., 809 F. Supp. 360. "Physical injury" is understood to have occurred "when the property is altered in appearance, shape, color or in other material dimension." Traveler's Ins. Co. v. Eljer Mfg. Inc, 757 N.E.2d 481, 496 (Ill. 2001). "Conversely, to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage, such as diminution in value as a result from the failure of a component ... to function as promised." Id.

The underlying homeowner claims do not comprehend a loss of use of tangible property that is caused by physical injury to or destruction of other tangible property. Plaintiffs contend that Iron City Builders' ("IC Builders") faulty workmanship performed on the homes is in itself sufficient to satisfy any "physical injury" requirement. But faulty workmanship, without damage to the whole, is not a "physical injury." See Ryan Homes Inc. v. The Home Indemnity Company, 647 A.2d 939, 942 (Pa. Super. 1994) (defective workmanship

not causing damage to property other than the insured's work or product is not property damage under CGL policy); <u>Snyder Heating Company Inc. v. Pennsylvania Manufacturers Association Insurance Company</u>, 715 A.2d 483, 487 (Pa. Super. 1998) (insured's product must cause damage to other tangible property to constitute an occurrence and trigger property damage coverage).

Plaintiffs argue in the alternative that certain homeowner claims alleged "physical injury" beyond IC Builders' faulty workmanship. Specifically, one homeowner alleged that a bathroom drain leaked as a result of IC Builders' work, and another asserted a rotten wood beam, which IC Builders' promised to replace, collapsed and the livingroom floor dropped four inches, causing a jammed front door. Plaintiffs argue these two alleged physical injuries are sufficient to satisfy part "a" of the policy's definition of "property damage."

This reasoning is unavailing. The policy's definition of "property damage" requires the claimed "loss of use" to be caused by "physical injury" to tangible property. Simply alleging that plaintiff caused a "physical injury" to some property is not sufficient. Instead, the underlying allegations must imply that the "physical injury" caused the claimed loss of use.

Here, the alleged loss of use is the foreclosure (or potential foreclosure) on the homeowners' residences. We cannot conclude in good faith that the homeowners' suits comprehend that the foreclosures (or potential foreclosures) result from or are based upon any alleged physical injures from IC Builders' shoddy or incomplete workmanship. The homeowners do not allege a loss of use as a result of the alleged physical injuries, nor do their allegations even suggest under the most liberal reading that such injuries causally contributed to the foreclosures on the residences. To the contrary, the gravamen of the complaints identify the causes of any such loss to be the inflated appraisals occurring prior to the alleged physical injury, undisclosed charges, inaccurate information regarding payment terms, payment terms set higher than the homeowners' ability to pay and so forth. Because the complaints do not identify any plausible basis to connect the physical injury to the homeowners' residences to the

7

foreclosures or imminent foreclosures, plaintiffs' attempt to invoke this form of physical injury to tangible property is unavailing.

In Westfield, the potential for negligent liability for the causal forces leading to the foreclosures could not be eliminated as a matter of law and thus the homeowners' complaints comprehended a covered loss of use of tangible property that was not physically injured. Because State Farm's policies require a causal nexus between some physical injury to tangible property and the claimed loss of use, the scope of coverage thereunder is considerably narrower, and the homeowners' complaints do not identify or comprehend any loss of use within that scope of coverage. Consequently, defendant had no duty to defend any of the underlying suits and is entitled to summary judgment.

For the reasons set forth above, defendant is entitled to summary judgment on all claims in the complaint. An appropriate order will follow.

Date: September 11, 2007

*David Stewart Cercone*
David Stewart Cercone
United States District Judge

cc:  Ronald T. Elliott, Esquire
     Matthew F. Marshall, Esquire
     Dillon McCandless King Coulter
        & Graham
     Cranberry Professional Park
     501 Smith Drive, Suite 3
     Cranberry Township, PA 16066

     C. Leon Sherman, Esquire
     Thomas J. Campbell, Esquire
     C. Leon Sherman & Associates
     Fifth Floor, National City Center
     20 Stanwix Street
     Pittsburgh, PA 15222